Anthony Barnes (Bar No. 199048)
Jason Flanders (Bar No. 238007)
Email: amb@atalawgroup.com
AQUA TERRA AERIS LAW GROUP LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Phone: (917) 371-8293

*Attorneys for Plaintiffs*
SAN JOAQUIN RAPTOR/WILDLIFE RESCUE CENTER
CENTRAL VALLEY SAFE ENVIRONMENT NETWORK
PROTECT OUR WATER

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN JOAQUIN RAPTOR/WILDLIFE RESCUE CENTER a non-profit corporation, CENTRAL VALLEY SAFE ENVIRONMENT NETWORK and PROTECT OUR WATER, a non-profit association, | Case No.: 1:20-cv-01412-DAD-BAM **[PROPOSED] CONSENT DECREE** |
| Plaintiff, | |
| vs. | |
| QG PRINTING II LLC, a Connecticut limited liability company, | |
| Defendants. | |

-1-

## CONSENT DECREE

## RECITALS

**WHEREAS,** San Joaquin Raptor/Wildlife Rescue Center is a California non-profit 501(c)(3) public benefit conservation and research organization dedicated to wildlife preservation and protecting California surface waters from pollution and degradation, among other objectives, and Central Valley Safe Environment Network and Protect Our Water are both non-profit associations with similar missions (hereinafter "SJR/WRC, CVSEN & POW");

**WHEREAS,** QG Printing II LLC ("QG II" or "Defendant") owns and operates a printing facility at 2201 Cooper Ave, Merced, CA 95348 ("Facility");

**WHEREAS,** the Facility is categorized under Standard Industrial Classification ("SIC") Code 2752, covering establishments primarily engaged in printing by the lithographic process;

**WHEREAS,** stormwater discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-57-DWQ, and as amended by Water Quality Order No. 2015-0122-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** the General Permit requires all permittees, including Defendant, to comply with, *inter alia*, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be included and

-1-

timely updated in the facility's storm water pollution prevention plan, (3) implement certain response actions upon exceedance of action levels specified in the General Permit, to reduce pollutants in discharges as necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS,** on June 4, 2020 Plaintiffs issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Central Coast Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit, Water Quality Order 2014-0057-DWQ, at the Facility;

**WHEREAS,** on October 2, 2020, Plaintiffs filed a complaint against QG II in the Eastern District of California, Civil Case No. 1:20-cv-01412-DAD ("Complaint");

**WHEREAS,** Plaintiffs' Complaint alleged violations of the General Permit and CWA for Defendant's discharges of pollutants into storm drains and surface waters, including Black Rascal Creek and Bear Creek ("Receiving Waters");

**WHEREAS,** Defendant sampled for copper and nitrate + nitrite nitrogen in the first instance though not initially required by the General Permit to do so under SIC Code 2752;

**WHEREAS**, Defendant contends that it has not violated the General Permit or CWA as Plaintiffs have alleged in the Complaint;

**WHEREAS,** Plaintiffs and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings; and

**WHEREAS,** all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal state and local rules and regulations.

[PROPOSED]CONSENT DECREE

sf-4430102

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(l)(A) of the CWA, 33 U.S.C. § 1365(a)(l)(A);

2.      Venue is appropriate in the Eastern District Court pursuant to Section 505(c)(l) of the CWA, 33 U.S.C. § 1365(c)(l), because the Facility at which the alleged violations are taking place is located within this District;

3.      Without waiving any defenses Defendant may have to Plaintiffs' claims and for purposes of settlement, the Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.      SJR/WRC, CVSEN & POW have standing to bring this action;

5.      The Parties hereby consent to Magistrate jurisdiction; and

6.      The Court shall retain jurisdiction over this action for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

**I.      OBJECTIVES**

7.      It is the express purpose of the Settling Parties through this Consent Decree to follow the objectives of the Clean Water Act, and to resolve all issues alleged by SJR/WRC, CVSEN & POW in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

8.      In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, and comply with the terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

**II.      AGENCY REVIEW AND CONSENT DECREE TERM**
**A.      AGENCY REVIEW OF CONSENT DECREE**

-3-

9.     <u>Agency Review</u>. Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires 45 calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

10.     <u>Court Notice</u>. Plaintiffs shall notify the Court of the receipt date by the Federal Agencies as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

11.     <u>Entry of Consent Decree</u>. Following expiration of the Federal Agencies' 45-day review period, Plaintiffs shall submit the Consent Decree to the Court for entry.

**B.     EFFECTIVE DATE AND TERM OF CONSENT DECREE**

12.     <u>Effective Date</u>. The Effective Date of this Consent Decree shall be the date of entry by the Court.

13.     <u>Term & Termination</u>. This Consent Decree shall terminate on October 1, 2022, unless: 1) either the Facility satisfies the requirements of and receives an approval for a "Notice of Termination" ("NOT") as that term is defined in the General Permit, in which case the Consent Decree will terminate as to the Facility approved for NOT five days after notice of the NOT is provided to SJR/WRC, CVSEN & POW, provided all monetary requirements owed under the Consent Decree are satisfied at the time the Facility receives NOT approval; or, 2) one of the Settling Parties has invoked Dispute Resolution in accordance with Section IV of this Consent Decree, in which case the Consent Decree will terminate within the earlier of 15 days of notice by the Settling Parties that invoked Dispute Resolution that the dispute has been fully resolved or an order of the Court resolving the dispute and terminating the Consent Decree. "Term" means the period of time the Consent Decree is in full force and effect.

14.     <u>Early Termination</u>. Notwithstanding paragraph 13 above, if the Action Plan requirements detailed below have not been triggered, this Consent Decree shall terminate on

1  May 31, 2022 provided all payment requirements under this Consent Decree have been

2  satisfied.

3  **III.    COMMITMENTS OF THE SETTLING PARTIES**

4  **A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT**

5  **PRACTICES**

6  15.    <u>Current and Additional Best Management Practices</u>: Defendant shall maintain

7  the Best Management Practices ("BMPs") described in the Facility's SWPPP, and shall,

8  during the Term of the Consent Decree, (1) develop and implement BMPs identified herein, and

9  (2) develop and implement additional BMPs necessary to comply with the General Permit,

10  including but not limited to those that achieve Best Available Technology Economically

11  Achievable ("BAT") and Best Conventional Treatment Technology ("BCT") in order to comply

12  with the Permit's Receiving Water Limitations which require that discharges from the Facility

13  "not cause or contribute to an exceedance of any applicable water quality standards contained in a

14  Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan."

15  16.    <u>Structural and Non-Structural BMPs for the Facility</u>: Within thirty-five days of

16  the Effective Date, Defendant shall develop and implement the following BMPs, or continue to

17  implement the following BMPs that are already in effect at the Facility:

18  a.  QG II shall institute a formal pre-rain protocol involving inspection of filters,

19  deployment of synthetic wattles (Filtrexx Soxx or equivalent), and temporary

20  coverage of material most likely to increase storm water-borne pollutants.

21  b.  During the Wet Season (October 1 – May 31) QG II shall implement more robust

22  housekeeping measures, including, but not limited to, a) a sweeping program using

23  a CARB-compliant vacuum street sweeper of all paved areas of the Facility,

24  including one sweeping prior to the beginning of the 2021-2022 Wet Season, and at

25  least quarterly thereafter, for a total of four street sweepings during the subject Wet

26  Season and b) increase employee inspection and hand sweeping of active outside

27  paved areas, and areas around drain inlets, catch basins and loading bays at least

28  biweekly. QG II shall document compliance with this paragraph, and SJR/WRC,

-5-

CVSEN & POW shall have the right to inspect documentation related to sweeping during any site inspection

c.  During the Wet Season, QG II shall deploy Filtrexx Soxx or equivalent synthetic wattles around the drop inlets at the Facility.

d.  QG II shall clean the Filtrexx Soxx or equivalent synthetic wattles around the drop inlets at the Facility on a regular schedule in accordance with the manufacturer's instructions.

e.  QG II shall replace the Filtrexx Soxx or equivalent synthetic wattles around the drop inlets at the Facility on a regular schedule in accordance with the useful lifespan of the synthetic wattles, requiring replacement, at a minimum, at the midpoint of the Wet Season (on or about January 31), and again prior to the start of the subsequent Wet Season.

f.  QG II shall store all hazardous substances and wastes under cover, on sealed surfaces equipped with secondary containment.

g.  QG II shall train employees on appropriate hazardous materials use and hazardous wastes control/disposal procedures at the time of employment, and annually thereafter;

h.  QG II shall ensure all onsite vehicles and equipment are free of leaks;

i.  QG II shall inspect operation work areas daily to ensure adequate implementation and maintenance of operational procedures and control measures; and train all employees on proper operational procedures and control measures at the time of employment, and annually thereafter.

Additionally, QG II has recently implemented to following BMPs at the Facility:

j.  QG II placed containers previously stored outdoors in a covered containment area and roll off containers have been covered with secure lids.

k.  QG II has moved the following materials previously stored outside, inside the main industrial building:

a.  Ten powered industrial fork trucks;

-6-

b.  Fifteen 275-gallon totes of ink;

c.  Four Big Joe Pallet Jacks;

**B. SAMPLING AT THE FACILITY**

17.     QG II shall continue to implement a monitoring program consistent with the General Permit. Under this Consent Decree Defendant shall collect samples of storm water discharge from Discharge Locations designated in the SWPPP during the 2020-2021 and 2021-2022 reporting years under the Term of the Consent Decree. Defendant shall collect storm water samples from each Discharge Location from at least four (4) QSE as required by the General Permit (i.e., two QSE during the first half of the reporting year[1] and two QSE during the second half of the reporting year). A QSE is a storm that produces a discharge from at least one (1) drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. Any failure to collect samples as required by this Consent Decree shall be documented and submitted to SJR/WRC, CVSEN & POW by email within five (5) days of the data a sample should have been collected but was not. If, prior to March 1 of a reporting year, QG II has collected samples from two (2) or fewer qualifying storm events, QG II shall, to the extent feasible, collect samples during as many QSEs as necessary until a minimum of 4 storm events have been sampled for the reporting year to the extent that there are sufficient number of QSEs.

18.     Sampling Parameters: All samples collected pursuant to this Consent Decree shall be analyzed for the parameters listed in Table 1.

19.     Laboratory and Holding Time. Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

---

[1] A reporting year is defined as July 1 to June 30.

[PROPOSED]CONSENT DECREE
sf-4430102

20.     Detection Limit: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the Industrial General Permit and Table 1 below.

21.     Reporting: Defendant shall provide complete laboratory results of all samples collected at the Facility to SJR/WRC, CVSEN & POW within ten (10) days of receiving the results.  Defendant shall also provide complete laboratory results of all samples collected at the Facility during the 2020-20201 reporting year and prior to the execution of this Consent Decree to SJR/WRC, CVEN, and POW within ten (10) days of signing this Consent Decree.

**C.     REDUCTION OF POLLUTANTS IN DISCHARGES**

22.     Defendant shall continue to develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1. Beginning with the first QSE sampled in the 2020-2021 reporting year at the Facility, and for the remainder of the Term of this Consent Decree, if storm water samples demonstrate an exceedance of the applicable numeric limit in Table 1 in a single reporting year, Defendant shall comply with the action plan requirement set forth below.

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | EPA Benchmark |
| Copper | 0.0332 mg/L | EPA Benchmark |
| pH | 6-9 s.u. | EPA Benchmark |
| Oil & Grease | 15 mg/L | EPA Benchmark |

23.     Table 1 Exceedances are defined as follows: in any reporting year under the Term of this Consent Decree and Action plan shall be required if 1) the average of all storm water analytical results for individual pollutant(s) exceeds any of the applicable benchmarks as set forth in Table 1; or 2) any storm water sample contains a single pollutant at a concentration that exceeds an Instantaneous NAL as set forth in Table 2 of the Permit.

24.     Action Plan for Table 1 Exceedances: If storm water samples demonstrate exceedance of Table 1 limits of as defined above during either the 2020-2021 or 2021-2022 Wet

-8-

Seasons, Defendant shall prepare and submit to SJR/WRC, CVSEN & POW a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") for the Facility.

25.   If an Action Plan is required following a reporting year, it shall be submitted by July 31 following the previous reporting year that demonstrated an Exceedance.

a.   Action Plan Requirements. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of the upcoming reporting year. Defendant shall notify SJR/WRC, CVSEN & POW in writing when an Action Plan has been implemented.

i.   Any Action Plan required following the 2021-2022 reporting year Term shall require, at a minimum, one or more of the following BMPs:

(a)   Increased frequency of hand and/or mechanical street sweeping during the Wet Season at the Facility to include areas of storm water conveyances, drain inlets, and areas of heavy industrial traffic;

(b)   Installation of Filtrexx ("Stormexx") or equivalent catch basin drain inlet filters;

(c)   Capture and infiltration of storm water consistent with Volume-Based BMP standards from the Permit (Section X.H.6.a);

(d)   Capture and treatment of storm water with media and chemical based systems, consistent with the Flow-Based BMP standards from the Permit (Section X.H.6.b);

sf-4430102

b.  Action Plan Review: SJR/WRC, CVSEN & POW shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving SJR/WRC, CVSEN & POW's proposed revisions to an Action Plan, Defendant shall consider each of SJR/WRC, CVSEN & POW's recommended revisions and accept them or explain in writing why any comment is not incorporated. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

c.  Action Plan Payments: Defendant shall pay Four Thousand Dollars ($4,000) each time an Action Plan is submitted to SJR/WRC, CVSEN & POW. Payments shall be made to "SJR/WRC, CVSEN & POW" addressed to: Aqua Terra Aeris Law Group LLP, Attn: Anthony M. Barnes and delivered by overnight carrier to Aqua Terra Aeris Law Group, 4030 Martin Luther King Jr. Way, CA 94609. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

**D. VISUAL OBSERVATIONS**

26.   Storm Water Discharge Observations: Defendant shall comply with the storm water discharge visual observation requirements set forth in the Permit and the SWPPP.

27.   Non-Storm Water Discharge Observations: During the Term of this Consent Decree, Defendant shall conduct monthly non-storm water visual observations at each discharge location.

28.   Visual Observations Records: Defendant shall maintain observation records to document compliance with paragraphs 26 and 27 and shall provide SJR/WRC, CVSEN & POW with a copy of those records within fourteen (14) days of receipt of a written request from SJR/WRC, CVSEN & POW for those records.

29.   Employee Training Program: Within forty-five days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the Industrial General Permit and this Consent Decree

[PROPOSED]CONSENT DECREE

sf-4430102

("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the Industrial General Permit and this Consent Decree ("Training Program"):

    a.   Training shall be provided by a Qualified Industrial Stormwater Practitioner ("QISP").

        Sampling Training: Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory.

    b.   Employees: All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

    c.   The Defendant shall maintain training records to document compliance with this paragraph and shall provide SJR/WRC, CVSEN & POW with a copy of these records within fourteen (14) days of receipt of a written request.

    30.   SWPPP and Monitoring Implementation Plan ("MIP") Revisions and Update: Within sixty days of the Effective Date, Defendant shall amend the Facility's SWPPP and MIP to incorporate the requirements in this Consent Decree. Defendant shall also revise the SWPPP and MIP if there are any material changes in the Facility's operations, including but not limited to changes in storm water discharge points or BMPs within thirty days of the changes.

### E.    COMPLIANCE MONITORING AND REPORTING

    31.   During the Term, SJR/WRC, CVSEN & POW may conduct a site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit only if storm water samples demonstrate an exceedance of the applicable NALs that trigger an ERA in accordance with the Permit including the applicable NAL for copper. The scope of any Site Inspection shall be limited to areas of potential industrial sources with exposure to storm water, as identified in the SWPPP. Prior to entering the Facility, Plaintiffs and/or Plaintiffs' respective agents, contractors, or sub-contractors shall sign a reasonable access, indemnification, and confidentiality agreement, including any

requirements related to health & safety protocols, as determined in the Defendant's sole discretion. In the event of a dispute regarding Defendant's right to conduct a Site Inspection, the Parties agree to the dispute resolutions set forth in Section IV herein. Any Site Inspection shall occur during normal business hours, and SJR/WRC, CVSEN & POW will provide Defendant with as much notice as possible, but no less than seventy-two (72) hours' notice prior to a Site Inspection. Notice will be provided by telephone and electronic mail to the individual(s) designated below at paragraph 58. During a Wet Weather inspection, Plaintiffs may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to SJR/WRC, CVSEN & POW. SJR/WRC, CVSEN & POW's representative(s) may observe the split sample(s) being collected by Defendant's representative. SJR/WRC, CVSEN & POW shall be permitted to take photographs or video recording during any Site Inspection.

32. <u>Document Provision</u>. During the Term of this Consent Decree, Defendant shall notify and submit documents to SJR/WRC, CVSEN & POW as follows:

    a.    Defendant shall notify  SJR/WRC, CVSEN & POW that compliance documents, monitoring and/or sampling data are being submitted to the State Board or Regional Board contemporaneously with their submittal, and forward copies to SJR/WRC, CVSEN & POW of all written communications and/or correspondences, related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality, within five days of any written communications or correspondences. These notifications, written communications or correspondences shall be sent via electronic mail to the contact information provided in paragraph 58 below.

33. <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendants' compliance with this Consent Decree by paying Two Thousand Five Hundred Dollars ($2,500.00) within 45 days of the Effective Date of the Consent Decree, made payable to: Aqua Terra Aeris Law Group LLP, Attn: Anthony M.

sf-4430102

1  Barnes and delivered by overnight carrier to Aqua Terra Aeris Law Group, 4030 Martin

2  Luther King Jr. Way, Oakland, CA 94609.

3       34.    Failure to submit payment as required under this paragraph will constitute a

4  breach of the Consent Decree.

5       **F.    ENVIRONMENTAL MITIGATION, LITIGATION FEES AND**

6  **COSTS, STIPULATED PENALTIES, AND INTEREST**

7       35.    <u>Environmental Mitigation Project</u>: To remediate the alleged environmental

8  harms resulting from allegations in the Complaint, Defendant agrees to make a total payment

9  of Twelve Thousand Dollars ($12,000.00) to the Rose Foundation made within 45 days of the

10  Effective date, payable to the Rose Foundation for Communities and the Environment and

11  sent via overnight mail to Rose Foundation, 201 4th St. APT 102, Oakland, CA 94607.

12  Defendant shall provide SJR/WRC CVSEN & POW with a copy of such payment. The Rose

13  Foundation has served as trustee over 600 restitution and cy pres funds related to consumer

14  and environmental issues since its founding in 1992, and customarily uses restitution awards

15  to fund environmental and watershed protection projects in the region where the subject

16  facility is located.

17       36.    <u>SJR/WRC, CVSEN & POW's Fees and Costs</u>: Defendant agrees to pay a total

18  of Thirty-Eight Thousand Five Hundred Dollars ($38,500.00) within 45 days of the Effective

19  date, to SJR/WRC, CVSEN & POW to partially reimburse Plaintiffs for their investigation

20  fees and costs, expert/consultant fees and costs, reasonable attorney fees, and other costs

21  incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this

22  matter. The payment shall be made payable to: Aqua Terra Aeris Law Group LLP, Attn:

23  Anthony M. Barnes and delivered by overnight carrier to Aqua Terra Aeris Law Group, 4030

24  Martin Luther King Jr. Way, Oakland, CA 94609.

25       37.    <u>Interest on Late Payments</u>: Defendant shall pay interest on any payments, fees,

26  or costs owed to SJR/WRC, CVSEN & POW under this Consent Decree that SJR/WRC,

27  CVSEN & POW has not received by the due date. The interest shall accrue starting the first

28  day after the payment is due and shall be computed at a rate of 1% per month (12% per year).

-13-

[PROPOSED]CONSENT DECREE

Interest on late payments shall be made payable to SJR/WRC, CVSEN & POW and sent to the address listed in paragraph 58, below.

### IV.   DISPUTE RESOLUTION

38**.**   This Court shall retain jurisdiction over this matter for the Term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

39.   Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

40.   Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 39, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Eastern District of California. The Parties agree to request an expedited hearing schedule on the motion.

41.   In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

### V.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

42.   <u>Plaintiffs' Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiffs, on their own behalf and on behalf of their officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys

-14-

[PROPOSED]CONSENT DECREE

and other representatives, from and waives all claims that were or could have been raised based on the facts alleged in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

 A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR EXPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR. The Parties acknowledge that they have been advised by their respective attorneys concerning, and are familiar with, California Civil Code Section 1542, and they expressly waive any and all rights under California Civil Code Section 1542 and under any other federal or state statute or law of similar effect with respect to the matters that are the subject of the releases set forth in this Consent Decree.

 43. <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns ("Defendant Parties"), release Plaintiffs, their officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree. In the event Defendant is in compliance with the Consent Decree and Plaintiffs are contacted by third parties for an opinion and/or comment about the Defendant, Plaintiffs agree to either not comment or state only that the Settling Parties arrived at a negotiated settlement.

 **VI.** **MISCELLANEOUS PROVISIONS**

 45. <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an

-15-

1   admission of violation of any law, rule, or regulation. The Defendant maintains and reserves

2   all defenses it may have to any alleged violations that may be raised in the future.

3       46.     Counterparts. This Consent Decree may be executed in any number of

4   counterparts, all of which together shall constitute one original document. Telecopy and/or

5   facsimile copies of original signature shall be deemed to be originally executed counterparts

6   of this Consent Decree.

7       47.     Authority. The undersigned representatives for Plaintiffs and Defendant each

8   certify that s/he is fully authorized by the party whom s/he represents to enter into this

9   Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or

10  electronic mail shall be deemed binding.

11      48.     Construction. The language in all parts of this Consent Decree shall be

12  construed according to its plain and ordinary meaning, except as to those terms defined in the

13  Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings

14  used in this Consent Decree are for reference only and shall not affect the construction of this

15  Consent Decree.

16      49.     Full Settlement. This Consent Decree constitutes a full and final settlement of

17  this matter.

18      50.     Integration Clause. This is an integrated Consent Decree. This Consent Decree

19  is intended to be a full and complete statement of the terms of the agreement between the

20  Parties and expressly supersedes any and all prior oral or written agreements, covenants,

21  representations, and warranties (express or implied) concerning the subject matter of this

22  Consent Decree.

23      51.     Severability. In the event that any provision, paragraph, section, or sentence of

24  this Consent Decree is held by a court to be unenforceable, the validity of the enforceable

25  provisions shall not be adversely affected.

26      52.     Choice of Law. The laws of the United States and California shall govern this

27  Consent Decree.

28

sf-4430102

53.     <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

54.     <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

55.     <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein must be made in writing at least three days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

56.     <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiffs within ten days of any assignment.

57.     <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's reasonable control, including without limitation, any act of God, war, fire, pandemic, earthquake, flood, windstorm, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid

-17-

the Force Majeure event and which by exercise of due diligence has been unable to overcome

the failure of performance. The Parties shall exercise due diligence to resolve and remove any

Force Majeure event.

58.　　Correspondence. All notices required herein or any other correspondence

pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail

transmission to the e-mail address listed below, or if electronic mail is not feasible, then by

certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiffs: | If to Defendant: |
|---|---|
| Anthony M. Barnes | William F. Tarantino |
| Aqua Terra Aeris Law Group LLP | Morrison & Foerster LLP |
| 43030 Martin Luther King Jr. Way | 425 Market St. |
| Oakland, CA 94609 | San Francisco, CA 94105 |
| amb@atalawgroup.com | wtarantino@mofo.com |
| | |
| With copies to: | With copies to: |
| Lydia Miller, President | Dana Gruen |
| San Joaquin Raptor/Wildlife Rescue Center | Quad/Graphics, Inc. |
| Central Valley Safe Environment Network | N61 W23044 Harry's Way |
| and Protect Our Water | Sussex, WI 53089 |
| P.O. Box 778 | dgruen@quad.com |
| Merced, CA 95341 | |
| sjrrc@sbcglobal.net | |

Notifications of communications shall be deemed submitted three days after the date

that they are postmarked and sent by first-class mail, or immediately after acknowledgement

of receipt via email by the receiving party. Any change of address or addresses shall be

communicated in the manner described above for giving notices.

59.　　The Recitals set forth in this Consent Decree are hereby incorporated into and

shall constitute a part of this Consent Decree.

60.　　If for any reason the DOJ or the District Court should decline to approve this

Consent Decree in the form presented, the Parties shall use their reasonable best efforts to

work together to modify the Consent Decree within 30 days so that it is acceptable to the DOJ

or the District Court. If the Parties are unable to modify this Consent Decree in a mutually

acceptable manner that is also acceptable to the District Court, this Consent Decree shall

sf-4430102

immediately be null and void as well as inadmissible as a settlement communication under

Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval

and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the

date first set forth below.


APPROVED AS TO CONTENT

Dated:_____, 2021            By:_____
                                             Lydia Miller, President
                                             San Joaquin Raptor/Wildlife Rescue
                                             Center Central Valley Safe
                                             Environment Network and Protect Our
                                             Water

Dated:____April 1_____, ~~2020~~ 2021    By:_____
                                             Dana Gruen
                                             QG Printing II, LLC



APPROVED AS TO FORM


Dated:____April 1_____, 2021          AQUA TERRA AERIS LAW GROUP

                                         By:_____
                                             Anthony M. Barnes
                                             Attorney for Plaintiffs
                                             San Joaquin Raptor/Wildlife Rescue
                                             Center Central Valley Safe
                                             Environment Network and Protect Our
                                             Water

-19-

[PROPOSED]CONSENT DECREE

1 | immediately be null and void as well as inadmissible as a settlement communication under

2 | Federal Rule of Evidence 408 and California Evidence Code section 1152.

3 |    The Parties hereto enter into this Consent Decree and submit it to the Court for its approval

4 | and entry as a final judgment.

5 |    IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the

6 | date first set forth below.

7 |

8 | APPROVED AS TO CONTENT

9 |
10 | Dated: April 7 , 2021     By: _____
          Lydia Miller, President

11 |           San Joaquin Raptor/Wildlife Rescue
          Center Central Valley Safe

12 |           Environment Network and Protect Our
          Water

13 |

14 | Dated: April 1 , ~~2020~~ 2021   By: _____

15 |           Dana Gruen
          QG Printing II, LLC

16 |

17 |

18 | APPROVED AS TO FORM

19 |

20 |
21 | Dated: April 1 , 2021     AQUA TERRA AERIS LAW GROUP

22 |           By: _____

23 |           Anthony M. Barnes

24 |           Attorney for Plaintiffs
          San Joaquin Raptor/Wildlife Rescue

25 |           Center Central Valley Safe
          Environment Network and Protect Our

26 |           Water

27 |

28 |

-19-

Dated:_____April 2, 2021          MORRISON & FOERSTER

By:_____
                                                William F. Tarantino
                                                Attorney for Defendants
                                                QG Printing II, LLC

**IT IS SO ORDERED.**

**FINAL JUDGMENT**

      Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiffs and Defendant.

Dated:_____          EASTERN DISTRICT OF CALIFORNIA

_____
HONORABLE BARBARA A. MCAULIFFE
United States Magistrate Judge

-20-