UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| SAN JOAQUIN RAPTOR/WILDLIFE RESCUE CENTER, et al., | No. 1:20-cv-01412-DAD-BAM |
|---|---|
| Plaintiffs, | |
| v. | ORDER APPROVING CONSENT DECREE |
| QG PRINTING II LLC, et al., | (Doc. No. 16) |
| Defendants. | |

This matter is before the court on the parties' joint motion to approve the consent decree, filed on May 18, 2021. (Doc. No. 16.) Having reviewed and considered the submissions of the parties, the court determines this matter is suitable for resolution without oral argument. *See* L.R. 230(g). For the reasons set forth below, the court will grant the parties' joint motion and approve the consent decree.

This suit arises from a complaint for declaratory and injunctive relief brought pursuant to the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"). (Doc. No. 1.) Plaintiffs San Joaquin Raptor/Wildlife Rescue Center, Protect Our Water, and Central Valley Safe Environment Network ("plaintiffs") are a California non-profit corporation, a California non-profit association, and another California non-profit association, respectively. (Doc. No. 16-1 at 2.) Defendants QG

1

Printing II LLC and Quad/Graphics, Inc. ("defendants") are a Connecticut limited liability corporation and a Wisconsin corporation, respectively, who own and operate a printing facility located in Merced, California.  (Doc. No. 16-1 at 2.)

Prior to filing suit, plaintiffs issued a sixty-day notice letter on June 4, 2020 to defendants and state and federal agencies to inform them of defendants' alleged violations of various state water permits and the Clean Water Act.  (Doc. No. 16-1 at 3.)  Neither the EPA nor the State of California commenced an action within sixty days regarding the alleged violations, thus permitting plaintiff to file suit in this court.  *See* 33 U.S.C. § 1365(b)(1)(B).[1]  On October 2, 2020, plaintiffs filed a complaint in this action, alleging that defendants were unlawfully discharging polluted storm water from their printing facility located in Merced, California.  (Doc. No. 1 at ¶ 90.)  Additionally, plaintiffs alleged that defendants were in violation of various filing, monitoring, reporting, and best management practice requirements and other procedural and substantive requirements of numerous state water permits and the Clean Water Act.  (*Id.*)

On April 2, 2021, the parties filed a notice of settlement stating that they reached a proposed consent decree resolving the claims in this action.  (Doc. No. 12.)  On May 17, 2021, the United States Department of Justice, Environment and Natural Resources Division ("United States") filed a statement of interest, representing that it had reviewed the proposed consent decrees in this action and does not object to its entry by the court.  (Doc. No. 15-1.)  On May 18, 2021, the parties filed the pending request for entry of their proposed consent decree.  (Doc. No. 16-1.)

As part of the proposed consent decree, defendants are required to implement best management practices regarding storm water pollution prevention at the QG II printing facility.  (Doc. No. 16-1 at 6.)  Defendants also agree:  to provide plaintiffs copies of related documents submitted to regional and state boards or agencies regarding storm water quality or reporting; to permit plaintiffs to conduct a physical site inspection if storm water samples demonstrate an

---

[1] "The Clean Water Act explicitly allows private citizens to bring enforcement actions against any person alleged to be in violation of federal pollution control requirements." *Cal. Sportfishing Prot. All. v. River City Waste Recyclers, LLC*, 205 F. Supp. 3d 1128, 1148 (E.D. Cal. 2016) (citing *Ass'n to Protect Hammersley v. Taylor Res.*, 299 F.3d 1007, 1012 (9th Cir. 2002)).

1 exceedance of the applicable NALs that trigger an ERA in accordance with the Permit; and to pay
2 $38,500 to plaintiffs in attorneys' fees and costs and $2,500 for monitoring costs.  (*Id.*)  Finally,
3 the proposed consent decree provides that defendants will make a payment of $12,000 to the Rose
4 Foundation for Communities and the Environment, which will be used to advance projects that
5 improve water quality in local watersheds of San Joaquin County.  (Doc. No. 16-1 at 14.)[2]  The
6 consent decree will be effective until October 1, 2022, unless an action plan is required as
7 discussed in paragraph 25 of the proposed consent decree.  (*See id.* at 5.)

"A consent decree is 'essentially a settlement agreement subject to continued judicial policing.'"  *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)).  Thus, before approving a consent decree, a district court must independently determine that the proposed agreement is "fundamentally fair, adequate, and reasonable" and "conform[s] to applicable laws."  *Id.*; *see also Arizona v. City of Tucson*, 761 F.3d 1005, 1010–14 (9th Cir. 2014).  "[T]he district court must balance several factors, including but not limited to:  strength of the plaintiffs' case; risk, expense, complexity and possible duration of continued litigation; relief offered in settlement; extent of discovery already completed; stage of proceedings; experience and views of counsel; governmental participation; and reaction of the class members."  *Davis v. City & County of San Francisco*, 890 F.2d 1438, 1445 (9th Cir. 1989) (citing *Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).  Where a government agency is involved in the negotiation of the proposed consent decree, there is a presumption in favor of the decree's enforceability, and courts should pay deference to the agency's judgment.  *See S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984).

---

[2]  Where a proposed consent decree provides the payment of money to a third party for a supplemental environmental project, the United States asks the third party to confirm that it:  (1) is a § 501(c)(3) tax-exempt entity; (2) has read the proposed consent judgment; (3) will spend any money it receives for the purposes specified in the judgment; (4) will not use any money received for political lobbying activities; and (5) will submit a letter to the United States describing how the funds will be spent.  (Doc. No. 15-1 at 3.)  The United States indicates that the Rose Foundation provided such a letter on May 17, 2021, and that the proposed manner that the money will be expended is consistent with the law and the public interest.  (*Id.* at 2.)

Given the above, the court concludes that this consent decree will provide substantial relief to the parties. The consent decree as proposed is the product of an arms-length negotiation process and is fair, reasonable, and adequate, and not illegal, collusive, or against the public interest. Though a government agency was not involved in the negotiation of the proposed consent decree, the United States' comments regarding and non-opposition to the parties' request for the court's approval further indicate that the proposed consent decree is an appropriate resolution of this case. *See Pa. Envtl. Def. Found. v. Bellefonte Borough*, 718 F. Supp. 431, 435 (M.D. Pa. 1989) (considering comments from the United States, a nonparty, in approving a consent decree in a citizen suit action brought under the Clean Water Act).

For these reasons:

1. Plaintiffs' request for entry of the parties' consent decree (Doc. No. 16) is granted;
2. The parties' stipulation and proposed consent decree (Doc. No. 16-1) is approved;
3. The court retains continuing jurisdiction to enforce the consent decree in this action for the duration of the decree (*see* Doc. No. 16-1 at ¶¶ 6, 38); and
4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **June 15, 2021**                              /s/ Dale A. Drozd
                                                         UNITED STATES DISTRICT JUDGE